**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TENNESSEE**
**WESTERN DIVISION**

| | | |
|---|---|---|
| **JANE DOE 1,** individually and<br>on behalf of **MINOR DOE 2 .**, a minor | **)**<br>**)** | |
| | **)** | |
| **PLAINTIFFS,** | **)** | |
| | **)** | |
| | **)** | |
| **v.** | **)** | **CASE NO.  2:26-cv-02225-TLP-tmp** |
| | **)** | |
| | **)** | **JURY DEMANDED** |
| **MILLINGTON MUNICIPAL SCHOOLS,** | **)** | |
| AND **JASON NICHOLS**, in his official and | **)** | |
| personal capacity, AND **JAMES GRIFFIN**, | **)** | |
| AND **MICHAEL PERRY,** in his official and | **)** | |
| personal capacity | **)** | |
| | **)** | |
| **DEFENDANTS.** | **)** | |

**AMENDED COMPLAINT**

---

**COME NOW** Plaintiffs, **JANE DOE 1**  ("Plaintiff Mother"), individually and as parent

and next friend of **MINOR DOE 1**  ("Plaintiff Minor"), a minor child, by and through undersigned

counsel, and for their Amended Complaint against Defendants Millington Municipal Schools

("Defendant MMS"), Jason Nichols ("Defendant Nichols"), James Griffin ("Defendant Griffin"),

and Michael Perry ("Defendant Perry"). In support thereof, Plaintiffs state as follows:

**INTRODUCTION**

1.    This cause of action arises from a pattern of inappropriate, sexually charged, and

unwelcome conduct by Defendant Nichols toward female student-athletes under his

supervision and the failure of school officials to adequately protect students entrusted to

their care.

2.     At all relevant times, Plaintiff Minor was a student at Millington Municipal Schools and a member of the girls' basketball program coached by Defendant Nichols. As both a basketball coach and study hall teacher, Defendant Nichols occupied a position of authority and trust over Plaintiff Minor and other female students.

3.     Beginning no later than Fall 2023 and continuing through 2025, Defendant Nichols engaged in a pattern of conduct directed toward Plaintiff Minor and other female student-athletes that included inappropriate physical contact sexually suggestive gestures, invasive physical proximity, inappropriate comments, favoritism, intimidation, and other conduct that caused female student to feel uncomfortable, embarrassed, and unsafe.

4.     Defendant Nichols' conduct was not isolated to a single student. Multiple female student-athletes reported substantially similar experiences involving inappropriate touching, sexually suggestive handshakes, and other conduct that crossed professional boundaries between a school employee and the students under his supervision.

5.     Unfortunately, Plaintiff Mother eventually experienced the same sexually suggestive handshake used by Defendant Nichols. Upon recognizing the gesture and its sexual implications, Plaintiff Mother questioned Plaintiff Minor and learned that similar conduct had occurred repeatedly during her participation the basketball program.

6.     Plaintiff Mother reported her concerns to school officials. She communicated with school administrators, contacted law enforcement, and submitted written complaints describing inappropriate conduct, bullying, favoritism, and other concerns regarding Defendant Nichols' treatment of students.

7.     School officials were not confronted with an isolated allegation from a single student.

Rather, information available to school officials revealed concerns involving multiple students, repeated conduct occurring over an extended period of time, and allegations that Defendant Nichols had previously engaged in inappropriate behavior.

8. Following Plaintiffs' complaints, Defendant MMS initiated a Title IX investigation. The investigation documented multiple reports concerning Defendant Nichols' use of a sexually suggestive handshake, inappropriate physical interactions with female students, and conduct that caused discomfort among students participating in the basketball program.

9. As a result of the conduct described herein and the circumstances surrounding it, Plaintiff Minor was eventually forced to leave Millington Municipal Schools and transfer to another school district. The transfer caused substantial educational disruption and resulted in the loss of academic opportunities, scholarship opportunities, program participation opportunities, and other educational benefits previously available to Plaintiffs.

10. Plaintiffs have suffered significant emotional, educational, financial, and personal harm as a result of Defendants' actions and omissions.

11. This cause of action seeks to hold Defendants accountable for the injuries suffered by Plaintiff and to obtain all relief authorized by federal and Tennessee law.

### JURISDICTION AND VENUE

12. This action arises under the Constitution and laws of the United States, including Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 et seq., and 42 U.S.C. § 1983.

13. This Court has subject matter jurisdiction over Plaintiffs' federal claims pursuant to 28 U.S.C. §§ 1331 and 1343 because the action presents federal questions and seeks to redress for the deprivation of rights secured by the Constitution and laws of the United States.

3

14. This Court has supplemental jurisdiction over Plaintiffs' state-law claims pursuant to 28 U.S.C. § 1367 because those claims arise from the same nucleus of operative facts as Plaintiffs' federal claims.

15. At all times relevant to this action, Defendant MMS was a public-school district organized and existing under the laws of the State of Tennessee.

16. At all times relevant to this action, Defendant MMS received federal financial assistance and was therefore subject to the requirements of Title IX, 20 U.S.C. § 1681 et seq.

17. The acts and omissions giving rise to this action occurred within this judicial district.

18. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events and omissions giving rise to Plaintiffs' claims occurred within this district and because one or more Defendants reside, are located, or conduct business within this district.

19. All conditions precedent to the filing of this action have been satisfied, waived, excused, or otherwise occurred.

## **PARTIES**

20. At all times relevant to this action, Plaintiff Mother is an adult resident of Shelby County, Tennessee. Plaintiff Mother brings this action individually and as parent and next friend of Plaintiff Minor.

21. Plaintiff Minor is a minor child and citizen of Shelby County, Tennessee. At all times relevant to this action, Plaintiff Minor was a student enrolled within Defendant MMS and participated in school-sponsored athletics, including girls' basketball and track and field.

22. Defendant MMS is a public-school district organized and existing under the laws of the State of Tennessee. At all times relevant to this action, Defendant MMS operated and

controlled Millington Central Middle High School ("MCMHS"), the public school attended by Plaintiff Minor.

23. At all times relevant to this action, Defendant MMS received federal financial assistance and was therefore subject to the requirements of Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 et seq.

24. At all times relevant to this action, Defendant MMS employed Defendant Nichols, Defendant Griffin, and Defendant Perry and was responsible for the operation, administration, supervision, and oversight of its schools, employees, athletic programs, student activities, and Title IX compliance obligations.

25. At all times relevant to this action, Defendant Nichols was employed by Defendant MMS as the girls' basketball coach.

26. At all times relevant to this action, Defendant Nichols was also employed by Defendant MMS as a study hall teacher.

27. At all times relevant to this action, Defendant Nichols acted under color of state law and exercised authority over students participating in Defendant MMS's athletic programs, including Plaintiff Minor.

28. At all times relevant to this action, Defendant Perry was employed by Defendant MMS as the principal of the MCMHS's high school attended by Plaintiff Minor.

29. At all times relevant to this action, Defendant Perry acted under color of state law and exercised supervisory and administrative authority over school personnel, student safety, school operations, student discipline, and the implementation of Defendant MMS's policies and procedures.

30. At all times relevant to this action, Defendant Griffin was employed by Defendant MMS

5

as Superintendent of Schools.

31. At all times relevant to this action, Defendant Griffin acted under color of state law and exercised authority over the administration and operation of Defendant MMS, including personal matters, student welfare, policy implementation, and district-wide compliance obligations.

## FACTUAL ALLEGATIONS

32. Plaintiff Minor was at all relevant times a student enrolled in Millington Municipal Schools and a member of the girls' basketball program.

33. Defendant Nichols served as the girls' basketball coach and also worked as a study hall teacher within the school system.

34. As a basketball coach and school employee, Defendant Nichols occupied a position of authority, trust, and influence over Plaintiff Minor and other female students.

35. Plaintiff Minor participated in the girls' basketball program under Defendant Nichols' control and supervision.

36. Beginning in Fall 2023 and continuing through at least January 2025, Defendant Nichols engaged in a pattern of conducted directed toward female student-athletes that caused students to feel uncomfortable, embarrassed, intimidated, and unsafe.

37. During that period, Defendant Nichols repeatedly utilized a handshake involving rubbing, tickling, and tracing the palm of female students' hands, experienced by Plaintiffs. Multiple female student-athletes experienced the same conduct.

38. Plaintiffs and female students understood the gesture to carry sexual undertones and implications.

39. Defendant Nichols also routinely stood unusually close to female athletes during practices, workouts, and team activities. Female students described Defendant Nichols as overly touchy and physically intrusive.

40. Defendant Nichols made inappropriate comments to female students, including comments of a sexual nature.

41. Upon information and belief, Defendant Nichols also engaged in conduct involving intentionally pressing his genitals against female student-athletes when taking individual and group photos with the team.

42. The conduct described herein was directed toward female students participating in the basketball program. Defendant Nichols used his position of authority and trust to facilitate the conduct.

43. Upon information and belief, concerns regarding Defendant Nichols' conduct existed before Plaintiffs' formal complaint in April 2025.

44. About one year before Plaintiffs' formal report, Plaintiff Mother met with Defendant Perry regarding concerns involving Defendant Nichols. During that meeting, Defendant Perry discussed prior complaints involving Defendant Nichols.

45. Despite knowledge of prior complaints and concerns, Defendant Nichols remained unsupervised in a position of authority over female students, including Plaintiff Minor.

46. Plaintiff Mother observed additional concerns involving Defendant Nichols, including pettiness, favoritism, bullying, inappropriate language, and conduct that created division among team members. Plaintiff Mother informed Defendant Nichols that changes needed to occur regarding leadership within the female girls' basketball program and advised that she would remove her daughter from the school system if conditions did not improve.

47. During the week preceding April 7, 2025, Plaintiff Mother reported concerns to another school administrator regarding bullying, gossip, disrespect, inappropriate conduct, and sexually suggestive handshakes.

48. Plaintiff Mother also reported concerns to Defendant Perry and his staff that students had been encouraged to conceal or misrepresent information regarding incidents occurring within the basketball program.

49. During the same period, Plaintiff Mother received information that Defendant Nichols had transported student-athletes while possessing alcohol and had appeared to smell of alcohol during school-related activities, including practices and games. Plaintiff Mother included these concerns in her communications with Defendant Perry and his staff.

50. In March 2025, Plaintiff Mother personally experienced the same sexually suggestive handshake previously described by Plaintiff Minor and other female students. During the interaction, Defendant Nichols rubbed, tickled, and traced Plaintiff Mother's palm in a manner she immediately recognized as carrying sexual undertones and implications.

51. Plaintiff Mother is a retired military veteran who received extensive sexual harassment training throughout her military career. Based upon that training and experience, Plaintiff Mother immediately recognized the inappropriate nature of the gesture.

52. After experiencing the handshake, Plaintiff Mother asked Plaintiff Minor if she had experienced similar conduct with Defendant Nichols. Plaintiff Minor disclosed that she and her older sister had experienced similar conduct with Defendant Nichols.

53. Plaintiff Mother thereafter contacted the assistant coach and reported her concerns. The assistant coach advised Plaintiff Mother to contact the athletic director. Plaintiff Mother in turn communicated her concerns to the athletic director, who advised Plaintiff Mother that

8

Defendant Perry would contact her.

54. Defendant Perry did not thereafter contact Plaintiff Mother.

55. On April 7, 2025, Plaintiff Mother sent a detailed written complaint to Defendant Perry and his staff.

56. The complaint described inappropriate conduct by Defendant Nichols, including sexually suggestive handshakes, bullying, mistreatment of students, favoritism, and other concerns. The complaint further described an incident in which Defendant Nichols threw Plaintiff Minor's basketball poster into the trash in front of teammates, reflecting bullying, disrespect, and unprofessional behavior.

57. Plaintiff Mother also advised school officials that Defendant Nichols had repeatedly stated that "nothing will happen to me."

58. Following the written complaint, Plaintiff Mother reported the matter to law enforcement.

59. On April 8, 2025, Defendant MMS initiated a Title IX investigation.

60. The Title IX investigation examined allegations involving sexually suggestive handshakes, inappropriate physical interactions, invasive physical proximity, and inappropriate comments by Defendant Nichols.

61. The investigation included reports from multiple students. The investigation further included reports from Plaintiff Mother who had personally experienced some of the same conduct.

62. On April 15, 2025, the Title IX investigator distributed an investigative summary to the parties.

63. The investigation concluded on April 25, 2025.

64. The investigator found that multiple reports consistently described defendant Nichols

utilizing a handshake involving palm tickling.

65. The investigator found that the conduct was experienced by multiple students and corroborated by Plaintiff Mother.

66. The investigator further noted that although Defendant Nichols claimed ignorance regarding the meaning of the gesture, the conduct ceased after it was reported.

67. The investigator found that the conduct contributed to discomfort among female students participating in the basketball program.

68. As a result of the circumstances described herein, Plaintiff Minor was forced to leave Millington Municipal Schools.

69. Plaintiff Minor transferred to another high school during her junior year.

70. Before transferring, Plaintiff Minor was enrolled in a program that was unavailable at her new school. Plaintiff Minor lost access to that educational opportunity as a result of the transfer. Plaintiff Minor also lost access to Advanced Placement coursework previously available to her.

71. Plaintiff Minor lost academic credits and educational opportunities following the transfer. Plaintiff Minor's class ranking dropped from approximately eighth in her class to approximately eighteenth in her class following the transfer.

72. Plaintiff Minor lost scholarship opportunities and scholarship offers.

73. Plaintiff Minor was required to participate in dual enrollment coursework to replace opportunities unavailable at her new school. Plaintiff Minor's family incurred substantial transportation burdens associated with those educational arrangements.

74. Plaintiff Minor became emotionally withdrawn and combative following the events described herein.

75.    Plaintiff Minor further required counseling and therapeutic treatment. Plaintiff Mother incurred expenses for Plaintiff Minor's counseling and treatment.

76.    Plaintiff Minor was ostracized after her identity became known to staff and students in connection with the allegations while attending Millington Municipal Schools.

77.    Plaintiff Minor suffered humiliation, embarrassment, emotional distress, educational disruption, and other damages as a direct and proximate result of Defendant Nichols' conduct.

## CLAIM I

### Title IX Sex Discrimination and Deliberate Indifference, 20 U.S.C. § 1681
### (Against Defendant MMS)

78.    Plaintiffs incorporate by reference all preceding paragraphs as though fully set forth herein.

79.    At all relevant times, Defendant MMS received federal financial assistance and was subject to Title IX.

80.    Plaintiff Minor was a student participating in an educational program and activity operated by Defendant MMS.

81.    Defendant Nichols subjected Plaintiff Minor and other female student-athletes to unwelcome conduct of a sexual nature, including repeated sexually suggestive handshakes involving palm tickling, invasive physical proximity, inappropriate interactions, inappropriate comments, and other conduct described herein.

82.    The conduct was directed female students, including Plaintiff Minor, and occurred repeatedly over an extended period of time. The conduct was so sufficiently severe, pervasive, and objectively offensive that it deprived Plaintiff Minor of equal access to educational opportunities and benefits offered by Defendant MMS.

83. On or about April 7, 2025, Defendant MMS received a detailed written complaint describing inappropriate conduct toward female students, sexually suggestive handshakes, bullying, and other misconduct. The following day, Defendant MMS initiated a Title IX investigation.

84. The investigation revealed multiple reports concerning substantially similar conduct involving Defendant Nichols and female student-athletes. The investigation found that multiple students experienced the conduct and that Plaintiff Mother personally experienced the same sexually suggestive handshake.

85. Despite possessing information indicating that multiple female students had been subjected to similar conduct over an extended period of time, Defendant MMS failed to adequately protect Plaintiff Minor, maintain confidentiality, provide victim support services, and prevent the educational harm that followed.

86. As a direct and foreseeable result of Defendant MMS's deliberate indifference, Plaintiff Minor was forced to leave Millington Municipal Schools and transfer to another school district.

87. Plaintiff Minor lost access to a nursing program, Advanced Placement opportunities, scholarship opportunities, academic credits, and other educational benefits.

88. Plaintiff Minor suffered emotional distress, counseling expenses, educational disruption, humiliation, embarrassment, and other damages.

89. Defendant MMS is liable to Plaintiffs under Title IX.

## CLAIM II

**Sex Discrimination in Violation of the Equal Protection Clause, 42 U.S.C. § 1983**

**(Against Defendants Nichols, Perry, and Griffin)**

90.   Plaintiffs incorporate by reference all preceding paragraphs as though fully set forth herein.

91.   At all relevant times, Defendants acted under color of state law.

92.   Plaintiff Minor was entitled to the equal protection of the laws as guaranteed by the Fourteenth Amendment.

93.   Defendant Nichols directed the conduct described herein toward female student-athletes participating in the girls' basketball program.

94.   The conduct included sexually suggestive handshakes, inappropriate physical interactions, invasive physical proximity, comments, inappropriate comments, and other conduct directed at female students because of their sex.

95.   Upon information and belief, similarly situated male students were not subjected to the same conduct.

96.   Defendant Perry and Defendant Griffin possessed knowledge of allegations involving Defendant Nichols' mistreatment of female students and the concerns raised by Plaintiffs and others.

97.   Despite such knowledge, Defendant Perry and Defendant Griffin failed to take actions reasonably calculated to protect Plaintiff Minor and other female students from further harm.

98.   Defendants' actions and omissions denied Plaintiff Minor equal protection of the laws.

99.   As a direct and proximate result of Defendants' conduct, Plaintiffs suffered the injuries and damages described herein.

## CLAIM III

**Violation of the Right to Bodily Integrity Substantive Due Process, 42 U.S.C. § 1983**

**(Against Defendants Nichols. Perry, and Griffin)**

100.  Plaintiffs incorporate by reference all preceding paragraphs as though fully set forth herein.

101.  Plaintiff Minor possessed a clearly established constitutional right to bodily integrity and to be free from sexually inappropriate conduct by a public-school employee.

102.  Defendant Nichols occupied a position of authority and trust over Plaintiff Minor as both a basketball coach and school employee.

103.  Defendant Nichols repeatedly engaged in unwelcome physical interactions, sexually suggestive touching, invasive physical conduct, and other conduct described herein.

104.  Defendant Nichols used his authority as a coach and school employee to facilitate the misconduct.

105.  Defendant Perry and Defendant Griffin possessed actual knowledge of facts indicating a substantial risk that female students were being subjected to inappropriate conduct by Defendant Nichols.

106.  Despite possessing such knowledge, Defendant Perry and Defendant Griffin failed to take actions reasonably calculated to protect Plaintiff Minor from further harm.

107.  Defendants' conduct violated Plaintiff Minor's clearly established right to bodily integrity and that any objectively reasonable person operating in Defendants' positions would have been on notice that such conduct or omissions was impermissible and a violation of Plaintiff Minor's constitutional rights.

108.  As a direct and proximate result of Defendants' conduct, Plaintiffs suffered the damages described herein.

### CLAIM IV

**Supervisory Liability for Deliberate Indifference and Knowing Acquiescence,**
**42 U.S.C. § 1983**

14

**(Against Defendant Perry and Defendant Griffin)**

109. Plaintiffs incorporate by reference all preceding paragraphs as though fully set forth herein,

110. Defendant Perry and Defendant Griffin exercised supervisory authority over Defendant Nichols.

111. Almost a year before Plaintiffs' formal complaint, Defendant Perry discussed prior complaints regarding Defendant Nichols with Plaintiff's mother.

112. On April 7, 2025, Defendant Perry and Defendant Griffin received detailed notice regarding allegations involving sexually suggestive conduct toward female students.

113. The notice informed Defendant Perry and Defendant Griffin that the conduct involved multiple students, had allegedly occurred over an extended period of time, and included allegations of inappropriate physical interactions and sexually suggestive conduct.

114. Despite possessing notice of facts indicating substantial risk of harm to female students, Defendant Perry and Defendant griffin failed to adequately intervene, supervise, monitor, and protect students. Plaintiff Minor's right to be protected against deliberate indifference was clearly established at the time of the matters described herein, and any objectively reasonable person acting in Defendants Perry and Griffin's position would have known that such indifference or acquiescence to Defendant Nichols' conduct was impermissible and unconstitutional.

115. Defendants knowingly acquiesced in, condoned, tolerated, facilitated, and/or were deliberately indifferent to the unconstitutional conduct described herein. Their actions and omissions directly contributed to the deprivation of Plaintiff Minor's constitutional rights.

116. As a direct and proximate result of their conduct, Plaintiffs suffered the injuries and damages described herein.

## CLAIM V

### Municipal Liability Under 42 U.S.C. § 1983 (*Monell*)
### (Against Defendant MMS)

117. Plaintiffs incorporates by reference all preceding paragraphs as though fully set forth herein.

118. The constitutional violations suffered by Plaintiff Minor were directly caused by policies, customs, practices, failures to train, failures to supervise, and/or ratification attributable to Defendant MMS.

119. Upon information and belief, prior complaints and concerns regarding Defendant Nichols existed before Plaintiffs' April 2025 report.

120. Defendant Perry's discussion of prior complaints with Plaintiff Mother demonstrates that concerns regarding defendant Nichols were known within the district before Plaintiffs' formal complaint.

121. Despite such knowledge, Defendant MMS, including but not limited through Defendant Griffin, who was superintendent and final decision/policy maker for Defendant MMS, ratified and continued to allow Defendant Nichols to supervise and exercise authority over female students.

122. Defendant MMS failed to implement adequate training concerning sexual harassment, professional boundaries, employee misconduct, and the protection of students. When Plaintiff Mother specifically inquired whether such training existed, she was informed that it did not and would need to be implemented.

123. Defendant MMS failed to implement adequate safeguards to protect reporting students and maintain confidentiality.

124. Defendant MMS's customs, practices, failures, and deliberate indifference created an environment in which Defendant Nichols reasonably believed that complaints regarding his conduct would not result in meaningful consequences. Defendant Nichols repeatedly stated that nothing would happen to him and no one could get rid of him.

125. Defendant MMS's customs, practices, and failures were moving forces behind the constitutional violations suffered by Plaintiff Minor.

126. As a direct and proximate result of Defendant MMS's conduct, Plaintiff Minor suffered the injuries and damages described herein.

## CLAIM VI

### Retaliation in Violation of Title IX and 42 U.S.C. § 1983
### (Against Defendant Nichols and Defendant MMS)

127. Plaintiffs incorporate by reference all preceding paragraphs as though fully set forth herein.

128. Plaintiff Minor and Plaintiff Mother engaged in protected activity by reporting Defendant Nichols' conduct to school officials of Defendant MMS, participating in the Title IX investigation process, and reporting the conduct to law enforcement.

129. Defendant Nichols became aware that complaints had been made regarding his conduct. Thereafter, Defendant Nichols' treatment of Plaintiff Minor changed after complaints were made and after he became aware that his conduct had been reported.

130. Defendant Nichols had previously humiliated Plaintiff Minor by throwing her basketball poster into the trash in font of teammates. Defendant Nichols further criticized and/or attacked Plaintiff Minor in connection with her transfer from Millington Municipal Schools.

17

131. Plaintiff Minor's identity became known in connection with the allegations. Plaintiff Minor was ostracized and suffered additional emotional and educational harm following the reports.

132. Defendants' actions were reasonably likely to deter a student or parent from reporting misconduct by a school employee.

133. There exists a causal connection between Plaintiffs' protected activity and the adverse treatment described herein.

134. Defendants are liable for retaliation and for all ensuing damages as described herein above and below .

## CLAIM VII

### Intentional Infliction of Emotional Distress (Outrageous Conduct)
### (Against Defendant Nichols)

135. Plaintiffs incorporate by reference all preceding paragraphs as though fully set forth herein.

136. At all relevant times, Defendant Nichols occupied a position of authority, trust, supervision, and influence over Plaintiff Minor as both a basketball coach and school employee.

137. Defendant Nichols knew that Plaintiff Minor was a minor student entrusted to his supervision and care through the school-sponsored basketball program.

138. Defendant Nichols nevertheless engaged in a pattern of conduct directed toward Plaintiff Minor and other female student-athletes that included sexually suggestive handshakes, inappropriate physical interactions, invasive physical proximity, inappropriate comments, bullying behavior, humiliation, and abuse of authority.

139. Defendant Nichols' conduct was not isolated. The conduct occurred repeatedly over an extended period of time and involved multiple female students participating in the girls' basketball program.

140. Defendant Nichols further engaged in conduct designed to humiliate and demean Plaintiff Minor, including throwing Plaintiff Minor's basketball poster into the trash in front of teammates.

141. Defendant Nichols knew or reasonably should have known that his conduct would cause emotional harm to a minor student subjected to his authority.

142. Defendant Nichols knew or reasonably should have known that students would be particularly vulnerable to emotional injury because of the unequal power relationship between a coach and a student-athlete.

143. Defendant Nichols acted intentionally, recklessly, maliciously, and/or with conscious disregard for Plaintiff Minor's rights and well-being.

144. Defendant Nichols' conduct was so outrageous in character and so extreme in degree as to go beyond all bounds of decency and to be regarded as atrocious and utterly intolerable in a civilized community.

145. As a direct and proximate result of Defendant Nichols' conduct, Plaintiffs suffered severe emotional distress. Plaintiff Minor became emotional, withdrawn, distressed, and combative. Plaintiff Minor required counseling and therapeutic treatment.

146. Plaintiff Minor was ultimately forced to leave Millington Municipal Schools and transfer to another school district.

147. Plaintiff Minor lost educational opportunities, including participation in a particular program, access to Advanced Placement coursework, scholarship opportunities, academic

standing, and other educational benefits.

148. Plaintiff Minor also experienced ostracization after her identity became association with the allegations against Defendant Nichols.

149. As a direct and proximate result of Defendant Nichols' outrageous conduct, Plaintiff Minor has suffered humiliation, embarrassment, anxiety, emotional anguish, loss of enjoyment of life, educational disruption, and other emotional injuries.

150. Defendant Nichols is liable to Plaintiffs for intentional infliction of emotional distress under Tennessee law.

151. Plaintiffs are entitled to recover compensatory damages, punitive damages, costs, prejudgment interest where permitted, and all other relief available under Tennessee law.

## PRAYER FOR RELIEF

**WHEREFORE, PREMISES CONSIDERED**, Plaintiffs respectfully request that this Court enter judgment in their favor and against Defendants and award the following relief:

A. Declare that Defendants' actions, omissions, policies, customs, practices, and conduct violated Plaintiffs' rights under the Constitution and laws of the United States;

B. Award compensatory damages in an amount to be determined by the trier of fact for emotional distress, humiliation, mental anguish, pain and suffering, loss of educational opportunities, loss of athletic opportunities, loss of enjoyment of life, reputational harm, and all other injuries suffered as a result of Defendants' conduct;

C. Award damages to Plaintiff Minor, not less than $200,000.00, for emotional distress psychological injuries, humiliation, anxiety, loss of educational benefits,

20

loss of athletic opportunities, and all other damages resulting from Defendants' conduct;

D.      Award damages to Plaintiff Mother, not less than $150,000, for the emotional distress, mental anguish, psychological injuries, and other damages she sustained as a result of Defendants' conduct toward their daughters and the retaliation alleged herein;

E.      Award punitive damages against Defendants in an amount, not less than $200,000 sufficient to punish and deter similar conduct;

F.      Award pre-judgment and post-judgment interest as permitted by law;

G.      Award reasonable attorneys' fees, litigation expenses, expert witness fees, and costs pursuant to 42 U.S.C. §§ 1983 and 1988, Title IX, and all other applicable provisions of law;

H.      Award equitable and injunctive relief as the Court deems just and proper, including such relief as may be necessary to remedy the effects of Defendants' unlawful conduct and prevent similar misconduct in the future

I.      Award such other, further, and general relief as the Court deems equitable, just, and proper.

RESPECTFULLY SUBMITTED,

**THE WHARTON LAW FIRM**

s/André C. Wharton

André C. Wharton, #022588
1575 Madison Avenue
Memphis, Tennessee 38104
(901) 726-6884
andrecwharton@thewhartonlawfirm.com
*Attorney for Plaintiffs*

21

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the foregoing pleading has been served upon the following

this the 16th day of June, 2026:

**Edward J. McKenney, Jr., Esq.**
Harris Shelton Hanover Walsh, PLLC – East Memphis
16060 Primacy Parkway Suite 100
Memphis, Tennessee 38119
Email: emckenney@harrisshelton.com
*Attorney for Defendant*

**William J. Wyatt, Esq.**
Harris Shelton Hanover Walsh, PLLC – East Memphis
16060 Primacy Parkway Suite 100
Memphis, Tennessee 38119
Email: wwyatt@harrisshelton.com
*Attorney for Defendant*

**Milton Dale Conder, Jr., Esq.**
Rainey, Kizer, Butler, Reviere & Bell
209 E. Main
38301
Jackson, Tennessee 38305
Email: dconder@raineykizer.com
*Attorney for Defendant*

s/ Andre C. Wharton
ANDRÉ C. WHARTON

22